ORIGINAL

Andrea L. Richard
Jennifer A. Golden
The Richard Law Firm, P.C.
199 East Pearl Avenue, Suite 102
P.O. Box 1245
Jackson, WY 83001
(307) 732-6680
(307) 732-6638 Fax

*Attorney for Plaintiffs*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB - 4 2008

Stephan Harris, Clerk
Casper

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| INTERNATIONAL LEISURE HOSTS, LTD., )<br>A WYOMING CORPORATION )<br>d/b/a FLAGG RANCH, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>UNITED STATES DEPARTMENT OF THE )<br>INTERIOR; THE NATIONAL PARK SERVICE; )<br>DIRK KEMPTHORNE, in his official capacity as )<br>Secretary of the Department of the Interior; MARY )<br>BOMAR, in her official capacity as Director of the )<br>National Park Service; MICHAEL SNYDER, )<br>in his official capacity as Intermountain Regional )<br>Director for the National Park Service, )<br> )<br>Defendants. ) | 08CV 32-B<br><br>Case No. |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW, International Leisure Hosts, Ltd. d/b/a "Flagg Ranch" ("Flagg Ranch" or "Flagg"), by and through its undersigned counsel, and hereby files its Complaint for Declaratory and Injunctive Relief. For its Complaint, Flagg Ranch states as follows:

Receipt # CAS000270
Summons: ___ issued
 ✓ not issued

1

## INTRODUCTION

1. This Complaint seeks to address Flagg Ranch's takings claims for declaratory and injunctive relief against the Department of the Interior, National Park Service ("NPS"). These claims are the result of the multi-year and continuing policy of the NPS to unreasonably restrict the use of snowmobiles in Yellowstone and Grand Teton National Parks, and in the John D. Rockefeller, Jr. Memorial Parkway.

2. On November 22, 2000, the NPS, executed a Record of Decision ("ROD") prohibiting recreational snowmobile use in Yellowstone and Grand Teton National Parks, and in the John D. Rockefeller, Jr. Memorial Parkway beginning in the 2003-2004 winter use season. The NPS approved a final rule implementing the ROD on January 18, 2001 ("2001 Snowcoach Rule"). See 66 Fed. Reg. 7260 (January 22, 2001).

3. On December 6, 2000, Case No. 00-CV-229B was filed challenging the 2000 ROD, the 2001 Snowcoach Rule, and the Final Environmental Impact Statement ("FEIS") underlying the ROD and Rule. That matter was assigned to the Honorable Clarence A. Brimmer. In June 2001, the International Snowmobile Manufacturers Association ("ISMA"), the State of Wyoming and the Federal Defendants entered into a Settlement Agreement, through which the NPS agreed to prepare a supplemental EIS, and the parties agreed to stay any litigation pending completion of this process. At the request of the parties, this Court stayed this litigation.

4. In November, 2002, the NPS issued a rule postponing implementation of the 2001 Snowcoach Rule until completion of the supplemental EIS ("2002 Rule"). The 2002 Rule allowed unlimited snowmobile access for the 2002-2003 winter use season, but limited daily entries of snowmobiles during the 2003-2004 winter use season.

5.      In March 2003, the NPS issued a new Record of Decision ("2003 ROD") adopting an alternative that would allow continued snowmobile access to the Parks, subject to limitations on emissions reductions and daily entries. On December 11, 2003, the NPS issued its final rule adopting the 2003 ROD.

6.      Before the NPS completed its 2003 rulemaking, the Fund for Animals and the Greater Yellowstone Coalition filed lawsuits challenging the NPS' 2003 actions in the United States District Court for the District of Columbia ("D.C. District Court"). ISMA and Wyoming intervened in those actions.

7.      On December 16, 2003, the D.C. District Court issued a decision vacating the NPS's 2003 Supplemental EIS, ROD and Rule, and it ordered that the 2001 Snowcoach Rule be implemented. The State of Wyoming thereafter requested that the action challenging the 2001 Snowcoach Rule be reopened, and, on December 31, 2003, this Court issued an order reopening the case.

8.      On March 22, 2004, International Leisure Hosts, Ltd., doing business as Flagg Ranch, intervened in that action and thereafter filed a Complaint in Intervention. In addition to requesting that the Court declare the 2001 Snowcoach Rule in violation of the APA and enjoin its implementation, Flagg Ranch also requested that the Court declare the 2001 Snowcoach Rule to be a breach of the concessioner contract between Flagg Ranch and the NPS, and further requested that the Court order specific performance by the NPS under that contract and that the Court award Flagg Ranch damages for the NPS' breach of its contract with Flagg Ranch and for its taking of Flagg Ranch's property without due process and just compensation.

9.      On October 14, 2004, this Court entered its decision addressing the validity of the 2001 Snowcoach Rule. The Court held that the Rule was promulgated in violation of NEPA

and the APA, and it vacated the 2000 FEIS, 2000 ROD and the 2001 Snowcoach Rule. The Court did not address Flagg Ranch's contract and takings claims.

10. Following the Court's October 2004 decision, the NPS began promulgating new temporary winter use rules to govern snowmobile use in the Parks for the 2004-2005 season until the NPS could establish permanent rules. On November 10, 2004, the NPS published the final temporary rule ("2004 Temporary Rule"), which took effect on December 10, 2004. The 2004 Temporary Rule limited the daily entries of snowmobiles and required that all snowmobiles entering Yellowstone be accompanied by a commercial guide.

11. On November 10, 2004, the Wyoming Lodging and Restaurant Association ("WLRA") filed an action challenging the 2004 Temporary Rule. The State of Wyoming joined that action as an Intervenor-Plaintiff. On October 15, 2005, this Court issued its decision rejecting the challenges to the 2004 Temporary Rule and upholding the Rule. In so ruling, this Court stated, "[T]he Court also clearly realizes that not all visitors to the Parks require guides and most of these guests are very responsible in terms of protecting the Parks' resources. The Court hopes that the ultimate conclusion reached in the research of this issue allows many visitors to visit the Park on an unguided basis." Wyoming Lodging & Restaurant Assoc. v. U.S. Dep't of the Interior, 398 F.Supp.2d 1192, 1221 (D. Wyo. 2005).

12. On September 24, 2007, the NPS issued a new "Winter Use Plans Final Environmental Impact Statement," ("2007 FEIS"). The 2007 FEIS designated Alternative 7 as its preferred alternative, which alternative sets the daily snowmobile limit at 540 and requires that snowmobiling be one hundred percent commercially guided in Yellowstone National Park. The Record of Decision adopting this Alternative 7 as the final rule governing winter use activities in the Parks was signed on November 20, 2007. The final

rule was published in the Federal Register on December 13, 2007. See 72 Fed. Reg. 70781-70804 (Dec. 13, 2007).

13. Since the NPS promulgated the 2001 Snowcoach Rule and subsequent 2004 Temporary Rule, Flagg Ranch has been deprived of any reasonable opportunity to realize a profit on its winter operations. The winter use limits announced in the 2007 Rule represent a continuation of this situation for Flagg Ranch. Flagg Ranch's Complaint thus seeks resolution of Flagg Ranch's takings claims originally asserted but not ruled upon in the lawsuit challenging the 2001 Snowcoach Rule and now stemming from the 2007 Rule. Flagg Ranch seeks only declaratory and injunctive relief relating to those claims.

## JURISDICTION AND VENUE

14. Flagg Ranch incorporates herein by this reference paragraphs 1 through 13 of its Complaint as if set forth fully herein.

15. This Court has jurisdiction over this action under 28 U.S.C. § 1331, and Flagg Ranch's takings claims are properly before this Court pursuant to 5 U.S.C. § 702 and 5 U.S.C. § 706(2)(b) and 28 U.S.C. § 2201.

16. Venue is proper before this Court under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to these claims has occurred within this district and the property that is the subject of these claims is situated primarily in this district.

## THE PARTIES

17. Flagg Ranch incorporates herein by this reference paragraphs 1 through 16 of its Complaint as if set forth fully herein.

18. Flagg Ranch is a Wyoming corporation in good standing with the Wyoming Secretary of State.

19. Flagg Ranch is a full service summer and winter resort featuring a lodge (that

houses a restaurant, lounge, gift shop, convenience store and gas station), 92 modern guest rooms and log cabins, and a campground with 100 full hook-up RV sites and 75 tent sites. Flagg Ranch offers various summer and winter activities, including park tours during both summer and winter. In the summer, Flagg Ranch offers horse back riding, river float trips, and guided fishing. In the winter, Flagg Ranch offers snowmobile rentals and guided snowmobile tours.

20. Defendant Dirk Kempthorne is the Secretary of the Interior. He has ultimate responsibility for the actions of the Park Service, its decisions at issue in this case, and its compliance with law. He is sued in his official capacity.

21. Defendant Mary Bomar is the Director of the NPS, Department of the Interior. She has responsibility for the actions of the NPS, its decisions at issue in this case, and its compliance with law. She is sued in her official capacity.

22. Defendant Michael Snyder is the Regional Director, Intermountain Region, NPS, Department of the Interior. The three parks are located within the Intermountain Region. He has responsibility for the actions of the NPS within his region, including its decisions at issue in this case, and its compliance with law. He is sued in his official capacity.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

23. Flagg Ranch incorporates herein by this reference paragraphs 1 through 22 of its Complaint as if set forth fully herein.

24. Flagg Ranch's operation is ideally located 50 miles north of Jackson Hole, Wyoming, just two miles south of the Southern Entrance to Yellowstone National Park, in the scenic Federal Parkway, known as the John D. Rockefeller, Jr. Memorial Parkway. Flagg Ranch operates from the very southern doorstep of the Yellowstone National Park, our Nation's first and preeminent national park. Flagg Ranch is just five miles north of Grand

Teton National Park and is the only resort open between Jackson, Wyoming and Old Faithful at Yellowstone National Park during the winter, a distance of approximately 100 miles.

25.     Flagg Ranch operates under a long term concession contract entered into by the U.S. Department of Interior and the National Park Service. Flagg Ranch's current concession contract was for an original term of ten years, beginning on January 1, 1990 and continuing through December 31, 1999.

26.     Flagg and the NPS negotiated an extension of Flagg's concession contract for an additional ten-year term that will expire on December 31, 2009.

27.     NPS' agreement to extend Flagg's contract term did not come cheaply. As consideration for this additional ten-year term, Flagg agreed to relocate **all of its facilities** from their then visible location adjacent to the Snake River, into a wooded area further up a ridge and more secluded from view from the Parkway. The Contract required that Flagg construct a service area complex (convenience store, gas station, restrooms, etc.), a public food service facility, a maintenance and storage facility, adequate manager and employee housing (for 175 employees), new employee trailer pads, two campground comfort stations, and new guest lodging. In addition, the Contract required Flagg to rehabilitate the existing visitor campground and also remove all the old buildings and restore the original location adjacent to the Snake River to a natural condition.

28.     Flagg's investment in this mandated relocation was more than nine million dollars ($9,000,000) for the construction, relocation and renovation of its entire facility. A modern log lodge which includes the convenience store, gift shop, restaurant, lounge, and public restrooms was constructed, as well as a total of 30 separate log cabin duplexes and four-plexes that provide a total of 92 visitor hotel rooms. Additional new construction included

two visitor campgrounds, restroom/shower facilities, a maintenance building, a storage building, a commercial laundry, managerial housing (a house and two duplexes), 30 new employee trailer pads, and an employee recreation room/laundry facility. In addition, three employee dormitory units with enough housing for approximately 175 employees were relocated from the Snake River location to the new location and renovated to meet current building codes. The new employee housing is arguably the best employee housing in any national park. All facilities were constructed to be used in the winter as well as the summer, which significantly increased the construction costs.

29.    This substantial investment, financed and paid entirely by Flagg Ranch, as required by the Contract, was made with the express understanding that Flagg Ranch would recoup this expenditure with its summer and winter business operations, allowing Flagg to earn a reasonable return on its investment as provided in the Concession Contract. Additionally, the terms of the Contract state that Flagg will retain a possessory interest in the capital improvements it has made.

30.    Flagg Ranch operates, and has been operating since the start of its Contract, only two seasons a year - winter and summer - and in the winter, Flagg's opening and closing is coordinated with the opening and closing of Yellowstone National Park.

31.    Flagg's Contract grants it the right to conduct operations in both seasons and the Contract expressly grants Flagg Ranch the right to rent both guided and unguided snowmobiles as well as conduct other operations during the winter season. Flagg entered into the Contract with the understanding and expectation that it would be able to operate in both the summer and winter seasons for the entire term of the Contract. Flagg relied on these contract rights when it made the decision to complete the construction and renovation project as required under the Contract in order to extend its term.

32. Flagg's winter operations have long centered upon patrons who desire to explore Yellowstone on snowmobile. Flagg was one of the first concessionaires to provide snowmobile rentals into Yellowstone and historically, over sixty percent of Flagg's winter revenues come from snowmobile and snowcoach rentals, supporting Flagg's full-service winter operation. Equally important, the winter revenue historically has been about 1/3 of the total resort revenues.

33. Pursuant to its Concession Contract, Flagg Ranch holds the right to rent 85 snowmobiles each day during the winter season, either guided, unguided or a combination of both. As the preeminent location to access Yellowstone from the south, Flagg Ranch developed a strong winter business for families and individual groups seeking to experience Yellowstone's remarkable winters on their own and at their own pace. Flagg's long-term operations created a reputation and consumer expectancy different from other gateway business operations. Unlike guided snowmobile tours, Flagg's marketing niche centered on patrons who could travel on their own. In fact, in past years Flagg Ranch has also provided cross-country ski rentals, tours and snowshoe rentals.

34. Flagg's winter operations, including lodging, restaurant and retail business, are entirely dependant on its ability to rent snowmobiles. Without the snowmobile rental business, demand for lodging, food service and the other ancillary winter operations is minimal at best. The snowmobile rental business is the driving force behind the winter operations and without it Flagg cannot profitably offer the services of its facilities during the winter season.

## RELEVANT LEGAL FRAMEWORK

35. Flagg Ranch incorporates herein by this reference paragraphs 1 through 34 of its Complaint as if set forth fully herein.

36. Constitutional claims against the federal government fall under the framework set forth in the Administrative Procedures Act ("APA"). Under the APA, agency action must be set aside if it is found to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(b); Robbins v. U.S. Bureau of Land Management, 438 F.3d 1074, 1085 (10th Cir. 2006).

37. The "deferential 'arbitrary, capricious, [or] abuse of discretion' standard of review 'do[es] not apply to questions of law.'" Robbins, 438 F.3d at 1085 (quoting Slingluff v. Occupational Safety & Health Review Comm'n, 425 F.3d 861, 866 (10th Cir. 2005)).

## COUNT I-VIOLATION OF THE FIFTH AMENDMENT

38. Flagg Ranch incorporates herein by this reference paragraphs 1 through 37 of its Complaint as if set forth fully herein.

39. The Fifth Amendment to the United States Constitution provides in part that no person shall be "deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

40. Flagg Ranch is considered a person with all the protections afforded it by the Fifth Amendment.

41. Federal contractual obligations, like those created by the Concessioner Contract between Flagg Ranch and the NPS, may give rise to property interests protected by the Fifth Amendment. See, Robbins, 438 F.3d at 1085; Southern Disposal, Inc. v. Tex. Waste Mgmt., 161 F.3d 1259, 1265 (10th Cir. 1998); Transohio Savings Bank v. Director, Office of Thrift Supervision, 967 F.2d 598 (D.C. Cir. 1993).

42. The Concessioner Contract between Flagg Ranch and the NPS recognizes Flagg Ranch's significant capital investment and provides assurance that Flagg Ranch will be given a reasonable opportunity to make a profit. Specifically, the Contract provides that "the

establishment and maintenance of such facilities and services involves a substantial investment of capital and the assumption of the risk of operating loss, it is therefore proper, in consideration of the obligations assumed hereunder and as an inducement to capital, that the Concessioner be given assurance of security of such investment and of a reasonable opportunity to make a profit."

43. Flagg Ranch has a legitimate claim of entitlement to the opportunity to make a reasonable profit under the Concessioner Contract and therefore a Fifth Amendment protected property interest in its Concessioner Contract and in the reasonable opportunity to make a profit under that Contract.

44. The NPS proscription on unguided snowmobiling in Yellowstone National Park as provided in the 2001 Snowcoach Rule and the 2004 Temporary Rule deprives Flagg Ranch of a reasonable opportunity to make a profit in the winter season and economically viable use of its protected property interest in the winter season.

45. The NPS proscription on unguided snowmobiling in Yellowstone National Park as provided in the 2001 Snowcoach Rule and the 2004 Temporary Rule constitutes a "regulatory taking" without due process or just compensation and thus violates Flagg Ranch's Fifth Amendment rights.

46. The NPS proscription on unguided snowmobiling in Yellowstone National Park does not advance a substantial governmental interest, disproportionately concentrates economic harm on Flagg Ranch, and interferes with Flagg Ranch's reasonable investment-backed expectations.

47. The economic harm concentrated on Flagg Ranch by the NPS proscription on unguided snowmobiling is unfair and unjust in light of the more than nine million dollars ($9,000,000) Flagg Ranch invested in a mandatory relocation, re-construction and renovation

of its entire facility. In addition, the damage to Flagg Ranch's business reputation, as the caterer to patrons who could travel on their own in a leased snowmobile, is likewise unfair and unjust.

48. Monetary damages are inadequate to remedy the harm done to Flagg Ranch because of the ongoing uncertainty surrounding the use of snowmobiles in Yellowstone National Park. The uncertainty created by the NPS rulemaking and legal challenges to its rulemaking make it impossible for Flagg Ranch to plan and promote its winter operations and to have a reasonable opportunity to make a profit. Flagg Ranch should not be forced to annually file an action in the Federal Court of Claims in Washington, D.C. for money damages against the NPS because of the uncertainty surrounding the use of snowmobiles in Yellowstone National Park.

49. Flagg Ranch seeks a declaration that the NPS proscription on unguided snowmobiling has effected a regulatory taking of Flagg Ranch's protected property interest without due process or just compensation in violation of the Fifth Amendment. Flagg Ranch also seeks injunctive relief to restore its reasonable opportunity to make a profit under the Concessioner Contract, or to relieve it of any obligation to perform under the Contract under NPS proscriptions that deprive it of a reasonable opportunity to make a profit. See, Robbins, 438 F.3d at 1083-84; Transohio Sav. Bank, 967 F.2d at 610 ("litigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government," and "even where the relief sought is . . . specific performance" of the contract).

WHEREFORE, Flagg Ranch respectfully requests that this Court issue an Order:

1. Holding that the NPS proscription on unguided snowmobiling in Yellowstone National Park has virtually eliminated Flagg Ranch's guaranteed opportunity to make a

reasonable profit on the required facilities capital expenditures under the Concessioner Contract and has effected a regulatory taking of Flagg Ranch's protected property interest in violation of the Fifth Amendment;

2.     Enjoining enforcement of the proscription on unguided snowmobiling against Flagg Ranch or alternatively, relieving Flagg Ranch of any obligation to perform under the Concession Contract.

3.     Awarding Flagg Ranch its costs and reasonable attorneys' fees;

4.     And for such other and further relief as the Court deems just and proper.

DATED this _4th_ day of February, 2008.

THE RICHARD LAW FIRM, P.C.

*[signature]*
Andrea L. Richard
Jennifer A. Golden
199 East Pearl Avenue, Suite 102
P.O. Box 1245
Jackson, Wyoming 83001
Office: (307)732-6680
Fax: (307)732-6638